UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| OLIVERIO CORTES ALONZO,<br><br>　　　　Petitioner,<br><br>　　v.<br><br>KRISTI NOEM et al,<br><br>　　　　Respondents. | No. 1:25-cv-01519 WBS SCR<br><br>MEMORANDUM AND ORDER RE: PETITIONER'S MOTION FOR TEMPORARY RESTRAINING ORDER |

----oo0oo----

　　　　Petitioner Oliverio Cortes Alonzo has filed this ex parte motion for a temporary restraining order (Docket No. 6) based on his petition for writ of Habeas Corpus (Docket No. 1), requesting the court order that petitioner be provided with an individualized bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a).  Respondents oppose the motion.  (Docket No. 12.)

I.　Background

　　　　Petitioner is a native of Mexico who is sixty years old.  (Docket No. 1 at 10.)  He has lived in the United States

1

for more than 26 years and has five children.  (Id.)  On June 27, 2025, petitioner was arrested by immigration authorities; he has been in custody since that time and is now in removal proceedings.  (Id.)  The parties do not dispute that petitioner was never admitted to the United States.

Petitioner was granted a $1,500 bond by an immigration judge on August 1, 2025, but that determination was reversed by the Board of Immigration Appeals (the "BIA").  (Id.)  The BIA based its decision on Matter of Yajure Hurtado, 29 I. & N. Dec. 216 (BIA 2025), which held that "noncitizens who entered the United States without inspection were ineligible for bond redetermination hearings because they were seeking admission and fell within 8 U.S.C. § 1225(b)(2)(A)," a statutory provision mandating detention and thus precluding bond hearings for certain categories of noncitizens.  (Docket No. 1 at 13.)

Petitioner argues the BIA was in error because 8 U.S.C. § 1226(a) -- a discretionary detention provision allowing for bond hearings -- governs his detention.  (Id. at 11.)  Petitioner argues in the alternative that his detention violates due process.  (Docket No. 12 at 4.)  Respondents insist that § 1225(b)(2)(A) is the applicable statute, and that petitioner's due process has not been violated.  (Docket No. 11.)

II.  Legal Standard

"The standard for a [temporary restraining order] is the same as for a preliminary injunction."  Rovio Entm't Ltd. v. Royal Plush Toys, Inc., 907 F. Supp. 2d 1086, 1092 (N.D. Cal. 2012) (citing Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., 240 F.3d 832, 839 n.7 (9th Cir. 2001)).  "A plaintiff seeking a

2

preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). The last two factors "merge when the Government is the opposing party." Nken v. Holder, 556 U.S. 418, 435 (2009).

II. Discussion

    A. Likelihood of Success on the Merits

Likelihood of success on the merits is "the most important factor in determining whether a preliminary injunction is warranted." Garcia v. County of Alameda, 150 F. 4th 1224, 1230 (9th Cir. 2025) (internal citations and quotation marks omitted). Mere possibility is insufficient to meet this factor; petitioner must demonstrate "a strong likelihood of success on the merits." Save Our Sonoran, Inc. v. Flowers, 408 F. 3d 1113, 1120 (9th Cir. 2005).

    1. Noncitizen Statutory Detention Regimes

Section 1225(b)(2)(A) requires mandatory detention of "an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A). Section 1225(a)(1) further clarifies that "[a]n alien present in the United States who has not been admitted . . . shall be deemed for purposes of this Act an applicant for admission." Id. § 1225(a)(1).

Section 1226(a), on the other hand, states that "[o]n a

1  warrant issued by the Attorney General, an alien <u>may</u> be arrested
2  and detained" pending their final removal decision.  8 U.S.C. §
3  1226(a) (emphasis added).  Pursuant to the Laken Riley Act,
4  subsection (c) of Section 1226 was amended to mandate detention
5  for specific categories of noncitizens who have been charged with
6  certain crimes.  8 U.S.C. § 1226(c)(1)(E).

       Petitioner argues that he is likely to succeed on the merits of his statutory claim because the BIA's decision to apply Section 1225(b)(2)(A) was purportedly "contrary to the statutory framework and contrary to decades of agency practice applying § 1226(a)" to noncitizens in petitioner's position.  (Docket No. 6 at 9.)  Respondents retort that "[i]n view of legal developments, the government has determined that . . . § 1225 is the sole applicable immigration detention authority for <u>all</u> applicants for admission."  (Docket No. 11 at 3) (citing <u>Jennings v. Rodriguez</u>, 583 U.S. 281 (2018)).

       The "legal developments" to which respondents refer were jumpstarted by a policy memo, issued July 8, 2025, by the Department of Homeland Security ("DHS") in coordination with the Department of Justice ("DOJ"), which "require[ed] all 'applicants for admission' . . . to be mandatorily detained during removal proceedings pursuant to § 1225(b)(2)."  <u>Garcia v. Noem</u>, No. 25-cv-02180-DMS-MMP, 2025 WL 2549431 (S.D. Cal. Sept. 3, 2025).  This position was subsequently adopted by the BIA in their decision in <u>Matter of Yajure Hurtado</u>, 29 I. & N. Dec. 216 (BIA 2025), which ultimately determined petitioner's appeal result.  (Docket No. 6 at 8.)

       The court acknowledges at the outset the fluctuating

1  and complex tangle of issues presented by this recent shift in
2  approach to detention.  See Echevarria v. Bondi, No. cv-25-03252-
3  PHX-DWL (ESW), 2025 WL 2821282 (D. Ariz. Oct. 3, 2025) (noting
4  application of the statutes "as presenting a complicated and
5  debatable question"); cf. Torres v. Barr, 976 F. 3d 918, 923 (9th
6  Cir. 2020) ("The complex provisions of the INA have provoked
7  comparisons to a 'morass,' a 'Gordian knot,' and 'King Minos's
8  labyrinth in ancient Crete.") (internal citations and quotation
9  marks omitted).  As noted in petitioner's table of relevant
10 authorities -- which lists nearly one hundred (100) decisions in
11 just the last five months dealing with this issue -- courts
12 across the country are now wrestling with the question of the
13 scope and application of Sections 1225 and 1226 to noncitizen
14 detentions.  (See Docket No. 9 at 6-15.)
15         Here in the Eastern District of California, recent
16 decisions have largely rejected the DHS' expansive interpretation
17 of Section 1225(b)(2)(A) as applicable to all "applicants for
18 admission."  See, e.g., Lepe v. Andrews, No. 25-cv-01163-KES-SKO
19 (HC), 2025 WL 2716910 (E.D. Cal. Sept. 23, 2025); Rodriguez v.
20 Kaiser, No. 25-cv-01111-KES-SAB, 2025 WL 2855193 (E.D. Cal. Oct.
21 7, 2025); Ortiz Donis v. Chestnut, No. 1:25-cv-01228 JLT SAB,
22 2025 WL 2879514 (E.D. Cal. Oct. 9, 2025); Menjivar Sanchez v.
23 Wofford, No. 1:25-cv-01187-SKO (HC), 2025 WL 2959274 (E.D. Cal.
24 Oct. 17, 2025).
25         The approach taken in these cases -- that 1226(a)
26 rather than 1225(b)(2)(A) is the appropriate framework for
27 noncitizens already residing in the United States -- has been
28 embraced by many courts in other districts as well.  See, e.g.,

1  Garcia v. Noem, No. 25-cv-02180-DMS-MMP, 2025 WL 2549431 (S.D.
2  Cal. Sept. 3, 2025); Martinez v. Noem, No. EP-25-CV-430-KC, 2025
3  WL 2965859 (W.D. Tex. Oct. 21, 2025) (noting that acceptance of
4  the DHS' new interpretation represents "a minority view");
5  Buenrostro-Mendez v. Bondi, No. CV H-25-3726, 2025 WL 2886346
6  (S.D. Tex. Oct. 7, 2025) (noting that "almost every district
7  court to consider the issue" has rejected the DHS' view).
8       The court must note, however, that many of those
9  decisions were made in orders granting motions for either
10 temporary restraining orders or preliminary injunctions.  Such
11 motions are typically heard on short notice at the very outset of
12 proceedings, and as such do not necessarily reflect the final
13 decisions of those judges on the issue before the court.  See
14 Washington Capitols Basketball Club, Inc. v. Barry, 419 F. 2d
15 472, 475-476 (9th Cir. 1969) ("The grant of an order for a
16 preliminary injunction is not a final determination of the
17 case.")  The circumstances of this case are no different: the
18 motion for a temporary restraining order was filed on November
19 12, 2025; respondents were then compelled to file their response
20 two days later; and the court heard oral argument on the motion
21 on November 13 and 14, 2025, all within three court days of this
22 Order.
23      Notwithstanding the majority view, this court at this
24 stage must make its own determination as to whether petitioner
25 has made a sufficient showing of the likelihood of success on his
26 statutory claim.  The court is not persuaded that petitioner has
27 done so.  In line with recent decisions by Judge Bencivengo in
28 Chavez v. Noam, No. 3:25-cv-02325-CAB-SBC, 2025 WL 2730228 (S.D.

6

1    Cal. Sept. 24, 2025), and Judge Divine in Mejia Olalde v.Noem et
2    al, No. 1:25-cv-001568-JMD (E.D. Mo. Nov. 10, 2025), and for the
3    reasons stated below, the court finds petitioner is unlikely to
4    prevail on his statutory arguments.
5         Respondents argue that Section 1225's mandatory
6    detention for noncitizens who are "applicants for admission"
7    plausibly encompasses noncitizens in petitioner's position.  The
8    reasonableness of their argument is supported by the statutory
9    language.  In determining whether noncitizens who have not been
10   lawfully admitted to the United States are "applicants for
11   admission" within the meaning of this statutory scheme, it is
12   first necessary to decide whether they are deemed to be "seeking
13   admission" within the meaning of 8 U.S.C. § 1225(b)(2)(A).
14        Several courts rejecting the applicability of Section
15   1225 to physically present noncitizens have emphasized that
16   "seeking" must imply "some sort of present-tense action."  Lepe,
17   2025 WL 2716910, at *5 (citing Martinez v. Hyde, 792 F. Supp. 3d
18   211, 218 (D. Mass. 2025).  In other words, unless a noncitizen is
19   "actively seeking lawful entry," they are not an "applicant for
20   admission."  (Id.) (citing Lopez Benitez v. Francis, No. 25 CIV.
21   5937 (DEH), 2025 WL 2371588, at *6).  The Jennings case is also
22   cited among the majority view for the proposition that Section
23   1225 "authorizes the Government to detain certain aliens already
24   in the country pending the outcome of removal proceedings," as
25   opposed to noncitizens "seeking admission into the country."
26   Menjivar Sanchez, 2025 WL 2959274, at *2 (citing Jennings v.
27   Rodriguez, 583 U.S. 281, 289 (2018) (emphasis in original).
28        The court is not satisfied with this interpretation of

7

1  "applicant for admission."  The statutory language may cover a
2  pro-active engagement with the process of becoming a lawful
3  entrant, but courts both in this circuit and elsewhere have
4  recognized that the term also functions as a legal designation --
5  describing an individual's legal status for purposes of the
6  removal scheme -- rather than strictly a reference to present
7  conduct.  See Torres v. Barr, 976 F. 3d 918, 929 (9th Cir. 2020)
8  (noting that under § 1225, "all immigrants who have not been
9  lawfully admitted, regardless of their physical presence in the
10 country, are . . . in the position of an 'applicant for
11 admission'"); Pena v. Hyde, No. CV 25-11983-NMG, 2025 WL 2108913
12 (D. Mass. July 28, 2025) ("An alien is an 'applicant for
13 admission' if he has arrived to or is present in the country but
14 has not yet been lawfully granted admission."); Pipa-Aquise v.
15 Bondi, No. 1:25-cv-01094-MSN-WBP, 2025 WL 2490657 (E.D. Va. Aug.
16 5, 2025) ("An alien who arrives in the United States, or is
17 present in this country but has not been admitted, is considered
18 an applicant for admission.") (internal citations and quotation
19 marks omitted); Vargas Lopez v. Trump, No. 8:25CV526, 2025 WL
20 2780351 (D. Neb. Sept. 30, 2025) ("[J]ust because [petitioner]
21 illegally remained in this country for years does not mean that
22 he is suddenly not an 'applicant for admission' under §
23 1225(b)(2).").  The suggestion that petitioner may evade the
24 designation of "applicant for admission" merely because he has
25 already entered the United States elides the fact that he was
26 never lawfully admitted, regardless of what steps he actually
27 took to acquire that status.
28         Reliance on Jennings -- a case on which petitioner

8

1   likewise depends -- also appears debatable.  583 U.S. 281 (2018).
2   The Jennings case did not declare unequivocally that § 1225 does
3   not apply in cases such as petitioner's.  The Court there stated
4   that § 1225(b)(2) "serves as a catchall provision that applies to
5   all applicants for admission not covered by" the more specific
6   categories of § 1225(b)(1).  Jennings, 583 U.S. at 287; see also
7   Vargas, 2025 WL 2780351, at *9 ("The Court concludes that the
8   plain language of § 1225(b)(2) and the 'all applicants for
9   admission' language of Jennings permit the DHS to detain
10  [petitioner] under § 1225(b)(2).")  Moreover, as respondents
11  point out, the Court's introductory language is quite clear:
12  "[A]n alien who 'arrives in the United States,' or 'is present'
13  in this country but 'has not been admitted,' is treated as 'an
14  applicant for admission.'"  Id.
15          Petitioner further argues, again in line with recent
16  decisions, that a broad understanding of § 1225 would render
17  superfluous other specifying provisions of § 1226, including the
18  Laken Riley Act, which amended § 1226(c) to include specific
19  categories of noncitizens subject to mandatory detention (e.g.,
20  those convicted of crimes).  (Docket No. 6 at 12.)  "If every
21  'applicant for admission' . . . is already subject to mandatory
22  detention under section 1225(b)(2)(A) . . . there would be no
23  need for the [Laken Riley Act]."  Lepe, 2025 WL 2716910, at *6
24  (citing Maldondo v. Olson, No. 25-cv-3142 (SRN/SGE), 2025 WL
25  2374411, at *12 (D. Minn. Aug. 15, 2025) ("The Court will not
26  find that Congress passed the Laken Riley Act to 'perform the
27  same work' that was already covered by § 1225(b)(2).")
28          There is arguable justification for this reading, but

9

1  again the court is not sufficiently persuaded.  As a preliminary
2  matter, the argument reverses the order of events.  The Laken
3  Riley Act was passed before the new interpretation of § 1225 was
4  issued.  The Laken Riley Act could not therefore "perform the
5  work" of the expansive reading of § 1225, because that work had
6  not yet been done.  And as the court in Chavez v. Noam pointed
7  out, the new definition of "applicant for admission" does not
8  render the Laken Act superfluous because "[t]he Attorney General
9  may still exercise her detention discretion under § 1226(a) for
10 any other aliens falling under that subsection who are not
11 charged with specific crimes" enumerated by the amendment.
12 Chavez, 2025 WL 2730228, at *5.  The statutory carve-out added by
13 the Laken Riley act does not therefore strike this court as
14 inherently nullified by respondents' interpretation, which may in
15 fact be "performing the work" that was begun by the Act, that is,
16 to prevent individuals like the one who killed Laken Riley from
17 benefitting from the discretionary nature of § 1226.
18         The court finds that petitioner has failed to establish
19 that he is likely to succeed on the merits of his statutory
20 claim.  Because he "fails to meet this inquiry," the court need
21 not address the remaining Winter factors.  California v. Azar,
22 911 F. 3d 558, 575 (9th Cir. 2018).
23         This finding should not be understood an affirmative
24 endorsement of the view that respondents' interpretation of §
25 1225(b)(2)(A) -- which is in line with the expansive
26 understanding of mandatory detention applicability -- is correct.
27 The court does not decide the merits of the statutory
28 interpretation claim; only that petitioner has failed to show a

likelihood of success on it.

### 2. Due Process

Petitioner argues in the alternative that he "also has a due process right to a bond hearing." (Docket No. 12 at 4.) Respondent contends that the claimed process is not due, because "[a]n alien who has not effected a legal entry, i.e., has not been admitted into the United States, is entitled only to whatever the procedure authorized by Congress is." (Docket No. 11 at 5 (internal citations and quotation marks omitted).) Since neither party addresses whether petitioner was denied substantive due process, the sole issue is whether petitioner was denied procedural due process.

Petitioner has failed to establish that he is likely to succeed on the merits of his procedural due process claim because, as stated, he has never obtained lawful status in the United States and has thus not effected an "entry" into the country. See, e.g., Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 139 (2020) ("[A]liens who arrive at ports of entry—even those paroled elsewhere in the country for years pending removal—are treated for due process purposes as if stopped at the border." (citation modified)); Barrera-Echavarria v. Rison, 44 F.3d 1441, 1450 (9th Cir. 1995) ("Although aliens seeking admission into the United States may physically be allowed within its borders pending a determination of admissibility, such aliens are legally considered to be detained at the border and hence as never having effected entry into this country." (citation modified)).

Accordingly, "the procedure authorized by Congress" in

1    8 U.S.C. § 1225 constitutes procedural "due process" as far as
2    petitioner is concerned.  Shaughnessy, 345 U.S. at 212; see also
3    Angov v. Lynch, 788 F.3d 893, 898 (9th Cir. 2015) (for noncitizen
4    who "never technically 'entered' the United States," "procedural
5    due process is simply whatever the procedure authorized by
6    Congress happens to be." (citation modified)); Grigoryan v. Barr,
7    959 F.3d 1233, 1241 (9th Cir. 2020) (same).  And because Section
8    1225(b)(2)(A) does not "say[] anything whatsoever about bond
9    hearings," petitioner is not entitled to one.  Jennings v.
10   Rodriguez, 583 U.S. 281, 297 (2018).

11          Petitioner, in his reply brief, cites two cases for the
12   proposition that "[t]here is a right to a bond hearing before an
13   immigration judge for an individual with established ties to the
14   United States who entered without inspection."  (Docket No. 12 at
15   4 (citing Rodriguez Cabrera v. Mattos, No. 2:25-cv-01551-RFB-EJY,
16   2025 WL 3072687, at *14 (D. Nev. Nov. 3, 2025); Lopez-Camopos v.
17   Raycraft, No. 2:25-cv-12486, 2025 WL 2496379, at *9 (E.D. Mich.
18   Aug. 29, 2025).  However, petitioner's authority is unavailing;
19   in neither of those cases did the court hold that the petitioners
20   had a due process right to a bond hearing where § 1225 applied.

21          As is the case on petitioner's statutory claim, because
22   he has failed to demonstrate a likelihood of success on the
23   merits of his due process claim, the court "need not consider the
24   other [preliminary injunction] factors."  California v. Azar, 911
25   F.3d 558, 575 (9th Cir. 2018).

26          IT IS THEREFORE ORDERED that petitioner's motion for a
27   temporary restraining order (Docket No. 6) be, and the same
28   hereby is, DENIED.

Dated: November 17, 2025

_____
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE